UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

TANIA D. MENDEZ,

Plaintiff,

v.

CASE No. 8:11-CV-686-T-33TGW

MICHAEL J. ASTRUE,
Commissioner of Social Security,

Defendant.

_____

REPORT AND RECOMMENDATION

The plaintiff in this case seeks judicial review of the denial of her claim for supplemental security income payments.* Because the decision of the Commissioner of Social Security is supported by substantial evidence and contains no reversible error, I recommend that the decision be affirmed.

I.

The plaintiff, who was forty-four years old at the time of the most recent administrative hearing and who has the equivalent of a high school education and maybe more (Tr. 313, 317), has no relevant past work.

_____

*This matter comes before the undersigned pursuant to the Standing Order of this court dated January 5, 1998. See also Local Rule 6.01(c)(21).

She filed a claim for supplemental security income payments, alleging that she became disabled due to problems with her hands, legs, and feet (Tr. 233). The claim was denied initially and upon reconsideration.

The plaintiff, at her request, then received a _de novo_ hearing before an administrative law judge. The law judge found that the plaintiff had severe impairments of paresthesia of upper and lower extremities of uncertain etiology and schizoaffective disorder (Tr. 13). He concluded that these impairments restricted the plaintiff to "medium level exertion but limited in social demands and limited to understanding and carrying out unskilled instructions" (Tr. 15). The law judge determined, based upon the testimony of a vocational expert, that, despite the plaintiff's limitations, there was a significant number of jobs in the national economy that the plaintiff could perform, such as cleaner II, industrial cleaner, and hospital cleaner (Tr. 19). Accordingly, the law judge decided that the plaintiff was not disabled. The Appeals Council let the decision of the law judge stand as the final decision of the Commissioner.

II.

In order to be entitled to supplemental security income, a claimant must be unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which ... has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. 1382c(a)(3)(A). A "physical or mental impairment," under the terms of the Social Security Act, is one "that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. 1382c(a)(3)(D).

A determination by the Commissioner that a claimant is not disabled must be upheld if it is supported by substantial evidence. 42 U.S.C. 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971), quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938). Under the substantial evidence test, "findings of fact made by administrative agencies ... may be reversed ... only when the record compels a reversal; the mere fact that the record may support a contrary

conclusion is not enough to justify a reversal of the administrative findings." Adefemi v. Ashcroft, 386 F.3d 1022, 1027 (11th Cir. 2004) (en banc), cert. denied, 544 U.S. 1035 (2005).

It is, moreover, the function of the Commissioner, and not the courts, to resolve conflicts in the evidence and to assess the credibility of the witnesses. Grant v. Richardson, 445 F.2d 656 (5th Cir. 1971). Similarly, it is the responsibility of the Commissioner to draw inferences from the evidence, and those inferences are not to be overturned if they are supported by substantial evidence. Celebrezze v. O'Brient, 323 F.2d 989, 990 (5th Cir. 1963).

Therefore, in determining whether the Commissioner's decision is supported by substantial evidence, the court is not to reweigh the evidence, but is limited to determining whether the record as a whole contains sufficient evidence to permit a reasonable mind to conclude that the claimant is not disabled. However, the court, in its review, must satisfy itself that the proper legal standards were applied and legal requirements were met. Lamb v. Bowen, 847 F.2d 698, 701 (11th Cir. 1988).

III.

The plaintiff challenges the law judge's decision on five grounds. None warrants reversal.

The plaintiff contends that the law judge erred in failing to make a proper credibility determination and erred in improperly discrediting the plaintiff's complaints of pain and other subjective symptoms (Doc. 16, pp. 4-5). The Eleventh Circuit has established a standard for evaluating complaints of pain and other subjective complaints. Dyer v. Barnhart, 395 F.3d 1206, 1210 (11th Cir. 2005). As the court of appeals explained in Landry v. Heckler, 782 F.2d 1551, 1553 (11th Cir. 1986), the pain standard "required evidence of an underlying medical condition and (1) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (2) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain." If the law judge determines that, under this test, there is objectively determined medical evidence of an impairment which could reasonably be expected to produce disabling pain, the law judge "must evaluate the credibility of claimant's

testimony as to pain, and must express a reasonable basis for rejecting such testimony." Hand v. Heckler, 761 F.2d 1545, 1549 n.6 (11th Cir. 1985).

The law judge properly applied the Eleventh Circuit's pain standard. The law judge recognized the need to articulate a credibility determination, and he referred to the pertinent regulations and Social Security rulings (Tr. 15). He even cited Landry v. Heckler (id.). This demonstrates that the law judge applied the proper standards. See Wilson v. Barnhart, 284 F.3d 1219, 1225-26 (11th Cir. 2002).

The law judge described the plaintiff's testimony, as well as her appearance and demeanor at the hearing (Tr. 15-16). He stated that, "[i]n sum, the claimant grossly exaggerated her symptoms and restrictions, which are not supported by the medical signs and laboratory findings to the level of disability alleged, as explained below" (Tr. 16). The law judge then discussed the medical evidence in detail (Tr. 16-18). He found (Tr. 18):

> After careful consideration of the evidence, the undersigned resolves reasonable doubt in claimant's favor in concluding that the claimant's medically determinable impairments could reasonably be expected to cause some of the alleged physical and mental symptoms. However, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms

> are not credible to the extent they are inconsistent with the above residual functional capacity assessment. For example, the claimant reports a very restricted lifestyle, *e.g.*, she alleges that she is "locked" in at home, performs no household chores, has no activities, has no hobbies, and has no social activities. Interestingly, however, she reports that he is able to manage her own funds. Also, the record indicates that she is able to maintain social relationships, such as her boyfriend. She appears well groomed and appropriate at numerous appointments, and she has friends and family who are willing to provide transportation.

The plaintiff asserts that the first two sentences of this quotation are simply boilerplate (Doc. 16, p. 4). However, they directly address the application of the Eleventh Circuit pain standard. Moreover, the law judge did not simply state that the claimant is not credible, but rather he expounded on his credibility determination.

In stating that the plaintiff "grossly exaggerated her symptoms and restrictions," the law judge considered the plaintiff's medical findings. For example, the plaintiff said she could not hold a cup of water (Tr. 41), but the law judge pointed out that the neurological tests were essentially normal (Tr. 16). The law judge also noted that the plaintiff "stated she could sit for only 15 to 20 minutes, but remained seated during the approximately one and

one-quarter hour hearing without significant difficulty observed from a lay perspective" (Tr. 15).

In addition, the law judge acknowledged that the plaintiff said she was "'locked' in at home" (Tr. 18). However, the evidence established that the plaintiff was able to leave home enough to commit a grand theft, go to court and be convicted of the offense, and be placed on probation (Tr. 378-79). Moreover, the law judge described the plaintiff's demeanor at the hearing, which was inconsistent with an incapacitating mental impairment.

The law judge also stated that, "[s]uspiciously for self gain, claimant started pursuing out-patient treatment for her alleged mental symptoms after she had filed for supplemental security income" (Tr. 14). While the plaintiff complains that this comment was inappropriate speculation, the law judge could reasonably infer from the circumstances that the plaintiff's conduct was motivated by self-gain, particularly since the plaintiff admitted at the hearing that she had previously been incarcerated for fraud (Tr. 40).

In sum, the law judge evaluated the credibility of the plaintiff's testimony under the correct standards. Moreover, he provided adequate

reasons for discounting to some extent the plaintiff's testimony. Accordingly, the plaintiff's challenge to the law judge's credibility finding fails.

The plaintiff argues, second, that the law judge erred because he failed to give proper weight to the opinions of three mental health providers: Dr. H. Botros-Mikail, nurse practitioner Karen Correll, and Ms. S. Blount, a therapist (Doc. 16, pp. 7-8). The plaintiff does not contend that the law judge failed to consider any medical opinions regarding the plaintiff's physical condition.

Significantly, only one of the three mental health providers, Dr. Botros-Mikail, is a treating physician and thus an acceptable medical source for evidence under the regulations. 20 C.F.R. 416.913(a). The law judge is required to give opinions of treating physicians substantial or considerable weight unless there is good cause for not doing so. Phillips v. Barnhart, 357 F.3d 1232, 1240 (11th Cir. 2004). Good cause exists when the treating physician's opinion is not bolstered by the evidence, the evidence supports a contrary finding, or the opinion is conclusory or inconsistent with the physician's own medical records. Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997).

The law judge considered Dr. Botros-Mikail's opinion that the plaintiff is unable to work at this time, but discounted it. In this respect, the law judge explained (Tr. 18):

> [M]inimal weight is afforded, because, again, the opinion is not based on Dr. Botros' own objective findings, which are absent, or other acceptable techniques. Further, Dr. Botros did not specify work-related activities and did not specify a duration. In contrast, Dr. Botros actually did not check off "permanent" on this form but chose rather to check off that this condition is "temporary" for six months re-evaluation after therapy as recommended.

Thus, Dr. Botros-Mikail's opinion was discounted because it was not supported by any objective findings, but rather it was simply a conclusory statement written on a form (see Tr. 430). Furthermore, the statement was inadequate to demonstrate that the mental impairment would be disabling for at least twelve months. Thus, the form merely indicated that the disability was temporary with an estimated duration of six months (id.). There was no subsequent opinion in the record that indicated that the purported disability extended beyond that period. Furthermore, even if the opinion had stated that the disability would last at least twelve months, that is a matter, as the law judge had noted, that is not a medical opinion, but is an issue reserved to the

Commissioner. 20 C.F.R. 416.927; Lanier v. Commissioner of Social Security, 252 Fed. Appx. 311, 314 (11th Cir. 2007).

These reasons adequately justify the discounting of Dr. Botros-Mikail's opinion. The plaintiff has certainly not pointed to evidence in the record that compels a contrary conclusion. See Adefemi v. Ashcroft, supra.

The law judge also adequately evaluated the opinions of nurse practitioner Correll, and reasonably discounted them (Tr. 17-18). Correll wrote on a prescription pad on April 1, 2009, that the plaintiff "[a]t this time ... is unable to seek or maintain employment" (Tr. 377). The law judge provided solid reasons for giving this conclusory opinion minimal weight (Tr. 17-18).

Correll subsequently filled out some forms given to her by the plaintiff's attorney. On those forms, she marked that the plaintiff would have extreme limitations in the areas of social functioning; concentration, persistence, or pace; and episodes of deterioration or decompensation (Tr. 373). Inconsistently, however, Correll did not check another box denoting "Repeated episodes of decompensation" (Tr. 369). Correll also indicated that

the plaintiff would have numerous marked limitations in various functional areas (Tr. 371-72).

The law judge gave these opinions minimal weight for several reasons. Thus, the law judge pointed out that, at the time Correll filled out the forms, she had only seen the plaintiff a few times (Tr. 17). Further, he considered that Correll based her opinions primarily upon the plaintiff's subjective report (which the law judge had found to be "grossly exaggerated") and before knowledge of the response of the plaintiff's psychotropic medications (Tr. 17-18). The law judge stated that an impairment must be established by an acceptable medical source based on appropriate diagnostic techniques and medical evidence, not only by an individual's statement of symptoms (Tr. 18). In this respect, the law judge correctly said that Correll was not an acceptable medical source (id.). It is no answer to this circumstance to say that Correll works under the supervision of a physician because, as the law judge noted, the physician did not sign the form and there is no indication that the physician examined or treated the plaintiff (id.). Consequently, the law judge provided adequate reasons for discounting Correll's opinions.

The law judge also considered the Global Assessment of Functioning (GAF) score assigned by therapist Blount (id). He noted that Blount, who has an M.S. degree, is not an acceptable source for a diagnosis (id.). He added that her "assessment reports appear mainly based on subjective self-reports by the claimant but not on objective testing and findings" (id.). These reasons sufficiently justify discounting Blount's GAF assessment.

The plaintiff, therefore, has failed to show that the law judge erred in assessing the opinions of the three mental health providers that she identified.

The plaintiff's third issue is that the law judge erred in determining the plaintiff's residual functional capacity. Specifically, the plaintiff argues that it should have included limitations by Dr. Botros-Mikail and nurse practitioner Correll (Doc. 16, p. 10), as well as possibly therapist Blount (id., p. 9). As just explained, the law judge discounted those opinions. Moreover, the law judge's determinations were valid. Consequently, the law judge did not have to incorporate in his finding of the plaintiff's residual

functional capacity opinions that he had discounted. Cf. Davis-O'Brien v. Astrue, 415 Fed. Appx. 137, 140 (11th Cir. 2011).

The plaintiff's fourth claim is that the law judge failed to obtain all pertinent available medical records. Specifically, she complains that there were 506 pages of records from Tampa General Hospital and the law judge only obtained 47 pages of them (Doc. 16, p. 10). Notably, there is a subsequent billing invoice reflecting 383 pages (Tr. 458), so that there is a substantial question concerning the accuracy of the invoices.

The assertion that the Commissioner did not obtain all of the medical records was presented to, and rejected by, the Appeals Council, as follows (Tr. 2):

> On January 19, 2011, the representative submitted his brief and complained that at Exhibit 17F, the Administrative Law Judge had only added 47 pages of records from Tampa General Hospital but that the representative had expected 506 pages of records from Tampa General Hospital. The Administrative Law Judge did not limit the scope of his request for records from Tampa General; the representative did not submit any additional records from Tampa General Hospital; and the representative did not indicate what he thought would/should have been documented in the other pages of records that he had expected to be received from Tampa General Hospital.

At the representative's request, the Administrative Law Judge made a reasonable effort to obtain the claimant's records from Tampa General and the representative has not established that the claimant has significant additional records available from Tampa General. If the representative should establish that there are additional records tha[t] should be obtained from Tampa General, they may be obtained and considered in the processing of the claimant's subsequently filed application, which is currently pending in the Hearing Office.

Importantly, the plaintiff has not identified to this court any Tampa General Hospital records that are missing. It appears that the plaintiff may have been misled by a billing invoice showing 506 pages of medical records (Doc. 16, p. 10; Tr. 179). Thus, the Commissioner asked Tampa General Hospital to provide all records regarding the plaintiff and they only sent 47 pages. Other than the inconsistent billing invoices, there is no indication that there are any other records. The only hospitalization at Tampa General that the plaintiff mentioned related to a burn, and those records have been provided. The plaintiff has not identified any other hospitalizations, treatments, or examinations that took place at that hospital. Consequently, there is no reason to think that there are any gaps in the record.

The plaintiff also complains that he was not given any opportunity to examine the records from Tampa General that were entered into evidence. The Appeals Council also considered, and rejected, this complaint as follows (Tr. 2):

> On September 13, 2009, the claimant signed a release that authorized Tampa General Hospital to provide the claimant's records to the Social Security Administration (Exhibit 17F, page 4) and on October 20, 2009, the Administrative Law judge requested the claimant's updated records [from] Tampa General Hospital and the Administrative Law Judge copied the claimant's representative on the request (Exhibit 17F, page 1). Tampa General Hospital responded to the request and the response was entered into the record as Exhibit 17F. Since the representative had requested that these records be obtained and entered into the record and had not asked that they be provided to him prior to their admission into the record, the Administrative Law Judge entered the response directly into the record. The records were considered by the Administrative Law Judge prior to the issuance of the decision, and were referenced on the first page of the decision in the "procedural history" portion of the decision. The representative did not pose any objections at the time and did not request a CD copy of the Exhibit file. The representative filed a Request for Review of the Administrative Law Judge's decision and requested a CD copy of the hearing recording but did not request a CD copy of the Exhibits (Exhibit 20B). Under cover of a letter dated November 29, 2010, the representative was

provided the requested copy of the hearing recording (Exhibit 21B).

Moreover, the records that were obtained and placed into evidence without the attorney's review are in the administrative transcript filed with the court and thus are available to the attorney. The plaintiff has not even attempted to show that she was prejudiced by the records being admitted in evidence without her attorney's examination.

In sum, the plaintiff has not demonstrated that the law judge failed to obtain pertinent medical records. Further, she has not established that the law judge erred by entering the records from Tampa General directly into evidence. Consequently, this issue lacks merit.

The plaintiff's last argument is that the law judge erred in relying on his observations of the plaintiff at the hearing (Doc. 16, p. 12). As indicated, the law judge considered the plaintiff's appearance and demeanor at the hearing in evaluating her credibility. Contrary to the plaintiff's contention, the law judge was permitted to consider his observations of the plaintiff in making his credibility determination. Macia v. Bowen, 829 F.2d 1009, 1011 (11th Cir. 1987); Norris v. Heckler, 760 F.2d 1154, 1158 (11th Cir. 1985); Salazar v. Commissioner of Social Security, 372 Fed. Appx. 64, 67

(11th Cir. 2010). Importantly, the law judge simply considered his observations, along with other factors, including the medical evidence, and did not rely upon them exclusively or give them undue weight.

Finally, it is noted that, subsequent to the law judge's decision, the plaintiff was diagnosed with systemic lupus erythematosus and fibromyalgia by rheumatologists and opined to be disabled (Tr. 508, 516). Significantly, the plaintiff makes no argument under Ingram v. Commissioner of Social Security Administration, 496 F.3d 1253 (11th Cir. 2007), that the Appeals Council's denial of review was erroneous in light of this new evidence. Similarly, the plaintiff makes no contention that this evidence warrants a remand pursuant to the six sentence of 42 U.S.C. 405(g). This evidence, however, is due to be considered in connection with the subsequent application for supplemental security income, which the Appeals Council pointed out was filed many months ago (Tr. 2).

IV.

For these reasons, the decision of the Commissioner is supported by substantial evidence and does not contain reversible error. I, therefore, recommend that the decision be affirmed.

Respectfully submitted,

THOMAS G. WILSON
UNITED STATES MAGISTRATE JUDGE

DATED: MARCH 21, 2012

NOTICE TO PARTIES

Failure to file written objections to the proposed findings and recommendations contained in this report within fourteen days from the date of its service shall bar an aggrieved party from attacking the factual findings on appeal. 28 U.S.C. 636(b)(1).